STAGG, Respondent, *vs.* FRANKLIN & FITCH, Appellants.

1. Judgment affirmed upon a review of the facts found by the court below, a case having been made for a review, in accordance with the new practice.

*Appeal from St. Louis Circuit Court.*

*J. E. Munford*, for appellant. 1. The court below erred in admitting in evidence the deed of trust from J. F. Frauklin to J. L. Franklin's trustee, and the transfer of the same to Weld. They had no relevancy to the issue to be tried, which was, whether the deeds from Day and Weld to Fitch were in fraud of the creditors of J. F. Franklin. 2. The court below erred in its finding of the facts, upon the evidence. The case is properly saved to have that finding reviewed in this court. 3. Weld was a necessary party to the suit. He was to be affected by the decree. 9 Mo. Rep. 304. 10 ib. 184.

*Haight & Shepley, Glover & Campbell*, for respondent.

RYLAND, Judge, delivered the opinion of the court.

Henry Stagg, the plaintiff below, filed his petition in the Circuit Court of St. Louis county, against Joseph Fitch and Joseph F. Franklin, stating, in substance, that on the 8th of June, in the year 1849, Fraklin O. Day conveyed to said Fitch lot 259 in Wright, Chambers & Christy's Addition in north St. Louis ; that Fitch gave no consideration for the conveyance, nor was he cognizant of the same, when made, nor has he directed, nor did he expect the same to be made ; that said conveyance was for the benefit of the defendant, Joseph F. Franklin, and in order to prevent the liens of certain judgments attaching on the lot, and in fraud of the creditors of said Franklin ; that on the 20th of August, 1849, John G. Weld conveyed to said Fitch, another lot, in the city of St. Louis,

being part of block 282, and described in the petition by metes and bounds ; that no consideration was given by Fitch to Weld, and the conveyance was for the benefit of said Franklin, the defendant ; that Fitch never requested, nor expected it to be made, and knew nothing of its being made, and that it was made in fraud of the creditors of the defendant, Franklin ; that on the 2d of November, 1848, said Franklin confessed a judgment in favor of Fitch, for $3,014, but no such sum was owing, and said judgment was had without request from, and without any knowledge on the part of Fitch, and was in fraud of said Franklin's creditors ; if any thing was really owing by said Franklin to Fitch, on said judgment, it was paid prior to the 8th of June, 1849. Between 9th November, 1848, and 24th of April, 1849, other judgments were rendered against the defendant, Franklin, or against Franklin & Perry, a firm of which he was a member, to about the amount of $10,000. On these latter judgments, executions issued and levied on the lots conveyed to Fitch, and, on the 27th October, 1849, the same were sold to the plaintiff, Stagg, as the property of said defendant, Franklin. The sheriff's deed was made in conformity to the sale, November 3d, 1849. The prayer was that Fitch might convey to the plaintiff, or that the court would decree him the lots, or that Fitch be compelled to pay their value.

The answers of the defendants were, in substance, as follows : Franklin denies that the lots were conveyed to Fitch for his benefit, or to defraud his creditors, or that he, (Franklin) had, at the date of the conveyance, or now has, any interest in the lots. He avers, that Weld and Day were the legal and equitable owners of the lots ; that he had a negotiation with Weld by which the lots were conveyed to Fitch in part payment of a debt he owed Fitch, and as soon as the conveyances were made, he informed Fitch, who accepted the same. He denies that the the judgment confessed was fraudulent ; says he owed Fitch an amount over and above the judgment. Fitch denies that he gave no consideration for the lots, or that they were conveyed

to him for the benefit of Franklin, or to defraud his creditors; but says they were conveyed for a valuable consideration; that long previous to said conveyances, his co-defendant was largely indebted to him, and had given him many assurances he would pay; that immediately after the conveyances were made, he was informed of it by Franklin, and that the lots were conveyed in payment of said indebtedness; that he was not cognizant of the making of the deeds, but accepted the same as soon as advised. Denies all fraud; says he is an innocent purchaser, for valuable consideration, without notice. He says the judgment was honestly confessed for money owing to him by Franklin & Perry, and denies that it was paid prior to 8th June, 1849; admits the property conveyed to him was worth $4000, when conveyed; he says the conveyances were made in discharge of the judgment and moneys advanced to his co-defendant after the judgment. He insists that the lot obtained by him from Weld was sold to Weld under judgments and executions against his co-defendant, prior to plaintiff's purchase, and that Weld held the sheriff's deed. He admits the plaintiff's purchase, but charges that one of the judgments under which that purchase was made, had been confessed to secure the plaintiff in certain indorsements for Franklin, which said Franklin afterwards partially satisfied.

The cause was tried by the court without a jury, and the finding was in favor of the plaintiff; judgment was entered vesting in him the title to both the lots. The defendants asked for a review, which being denied, the case is brought here by appeal.

The evidence produced on the trial was documentary and oral. The documentary evidence, so far as I regard it necessary to be noticed, is as follows: The plaintiff read in evidence a deed of trust to Willis L. Williams, dated July 1st, 1848, from the defendant, Joseph F. Franklin, in favor of his father, Joseph L. Franklin, conveying the lot in block 282, and also the residence of the grantor on Locust street, in the city of St. Louis, with a large quantity of other real estate, and

20—VOL. XVIII.

all the grantor's household and kitchen furniture. This deed of trust recited an indebtedness by the younger to the elder Franklin of $15,500, as evidenced by two notes — one for $10,000, dated 1st January, 1846, payable seven years after date, interest payable semi-annually; the other dated July 1st, 1847, payable in seven years, interest payable half yearly, for the sum of $5,500. It was also recited, that the elder Franklin was acceptor to the plaintiff for the younger Franklin, for a large amount, and had also indorsed for the younger Franklin in favor of plaintiff. The deed then proceeded to secure the elder Franklin, on all said liabilities, and authorized, in the event of non-payment, a sale of the property on thirty days' notice, to satisfy said demands, first paying the costs and expenses of the trust; the deed further permitted the grantor to retain possession of the personal property till called for by the elder Franklin. The plaintiff also read a deed from the elder and the younger Franklins, dated July 26th, 1848, to John G. Weld, who is represented as a member of the firm of Coffin & Weld, by which, after reciting the deed of trust to Williams, and the $15,500 debt mentioned therein, and that the firm of Franklin & Perry was indebted to Coffin & Weld in the amount of two bills of exchange drawn by Franklin & Perry and accepted by the elder Franklin, one dated the 15th of April, 1848, for $3,000; the other dated April 20th, 1848, for $5,000, and cash paid out by Coffin & Weld, in the sum of $8,832 48, including interest up to July 21st, 1848, the grantors transferred to Weld for $6,667 52, the deed of trust to Williams and the notes for $15,500, to secure Weld in $8,832 48 and $6,667 52, with interest, and on payment of these sums, all Weld's interest was to cease, *and the two notes for $15,500 were to be surrendered to the party lawfully entitled.*

Plaintiff also read a deed of release by Williams, the trustee, to Weld, dated October 13th, 1848. This instrument recites the original deed of trust to Williams and the assignment to Weld, and then states, *that, whereas, said Weld has this day bought certain of the real estate contained in said*

*trust deed of the younger Franklin*, and the undersigned has been requested by Weld and the younger Franklin to release the same, said Williams proceeds to release to Weld four of the lots mentioned in said deed of trust—one of which is the lot in block 282, but not including the residence on Locust street. Plaintiff likewise read a deed from the younger Franklin, by W. L. Williams, his attorney in fact, J. G. Weld, by W. L. Williams, his attorney in fact, and said Williams, as trustee, dated January 9th, 1849, to Franklin O. Day, reciting that, whereas, Weld had acquired title to that portion of the property contained in the deed of trust, hereinafter described, and said Williams is authorized to relinquish, and has been requested so to do, &c., and relinquishing the residence on Locust street to said Day; also, a deed from Weld and wife, by the younger Franklin, attorney in fact, to Day, dated May 12th, 1849, conveying the last mentioned property to Day, in consideration of $10,000. I will here remark, that it appeared in evidence that, in part payment of this consideration of ten thousand dollars to Weld, Day conveyed to Fitch, by the request of the younger Franklin, the lot 259, in Wright, Chambers & Christy's Addition in North St. Louis.

Plaintiff also read a deed from the sheriff of St. Louis county to the plaintiff, dated November 3d, 1849, reciting five several judgments and executions against the younger Franklin, some against him individually, and others of the five against Franklin & Perry, and a levy, advertisement and sale of the real estate in dispute in this case, to the plaintiff, on 27th October, 1849.

The defendants objected, in the course of the hearing, to the competency and relevancy of all the documentary evidence, except the conveyances by Weld and Day to Fitch, and also, to all the oral testimony offered by the plaintiff not relating to said conveyances, but the objections were overruled and exceptions taken.

The defendants read in evidence a deed by the sheriff of St. Louis county, to John G. Weld, executed in January, 1849,

reciting a sale of the real estate mentioned in the deed of trust to Williams, on the 20th of January, 1849, under a judgment and execution in favor of Fitch against the younger Franklin, and a judgment, dated November 2d, 1848, for $3,014 and costs; and a judgment and execution in favor of Lyon *vs.* Franklin & Perry, for $3,382 50, said judgment, dated November 29th, 1848. There was, in addition to the foregoing, much oral testimony, that will be referred to hereafter.

1. The principal question involved in the argument of the case before this court, relates to the finding of the facts. This part of the case will, therefore, be first considered. It is not a little remarkable that, though all the persons really concerned in sustaining the honesty and integrity of the several conveyances on which the title of Fitch rested, were examined as witnesses by the plaintiff, and the case was submitted to the court almost exclusively on their testimony, nevertheless the finding should have resulted in overthrowing the conveyances. So unusual a circumstance, in the history of judicial proceedings, naturally induced this court to a very careful examination of the testimony. It must be admitted, that no persons could be so well qualified to speak of the transactions in issue in this case, provided they were not fictitious, but real business transactions, as Joseph F. Franklin, Joseph L. Franklin, J. G. Weld and Joseph Fitch. They, of all others, would be most competent to furnish a perfect and consistent detail of the circumstances, and explain the inducements that prevailed in making the contracts, so far as connected respectively with their personal observations. If the transactions were real transactions of business, conducted in good faith, it is difficult to perceive how their true nature could be either misconceived or forgotten, in the period which had elapsed up to the taking of their evidence in the case. On the contrary, if the considerations, objects and motives to the supposed contracts and conveyances were feigned and pretended merely, the difficulty of furnishing a consistent account of them, without continual concert between the contrivers, would be not less obvious. Let

us notice some of the principal points of the testimony of these witnesses. The younger Franklin in his deposition states, that, at the time of the assignment of the deed of trust to Weld, by himself and his father, Weld agreed, verbally, to pay out of said property a portion of his (Franklin's) indebtedness to Fitch, " *after he ( Weld) had received such sums of money out of the property as he required for his immediate wants,*" though he might thus fail to satisfy his own debt; that Weld did this because he knew that Fitch was, like himself, a confidential creditor. He says the property conveyed to Fitch was conveyed in pursuance of this arrangement; and further, that he, the younger Franklin, would only consent to the assignment of the deed of trust to Weld, in consideration that said Weld stipulated to appropriate a portion of the property in the deed for the benefit of Fitch. But when Weld comes to speak of the same subject, he declares, that he sold the property (that conveyed to Day) to Fitch; "that the consideration paid by Fitch was $3,200;" that the sale was effected through the younger Franklin, as his (Weld's) attorney in fact; he says " there was no understanding or arrangement with the younger Franklin by which any portion of the property was to be disposed of by the younger Franklin for his own benefit; and he further says, that the younger Franklin did not conduct that business to please him, in this, he was tardy in paying over the money received of Fitch, and he (Weld) revoked his power of attorney on that account. The defendant, Fitch, has given two accounts of the same matter—one in his answer to the plaintiff's petition, and the other in his deposition. In his answer he says, " that long previous to the conveyance to him, the younger Franklin was largely indebted to him, on business transactions, and had repeatedly promised to pay; that immediately after the conveyances were made, he was informed by the younger Franklin, that, by an arrangement with Weld and Day, the lots had been conveyed in payment of said indebtedness. He (Fitch) accepted and received the same in payment of said indebtedness." Again, he says, " the lots were conveyed

to him in discharge of the judgment confessed and advances made to the younger Franklin, since the judgment and before the conveyances." So much for his answer. In his deposition he would have us believe, that he deposited the money in the hands of the younger Franklin, expressly to purchase the lots, and paid the cash for them; he says, "Franklin (the younger) was furnished by me with money, from time to time, to buy property in my name." "John G. Weld conveyed the property to me, through my agent, Mr. Franklin, in the fall of 1849. I have never given any notes for the purchase of said property, unless my attorney may have done so." He then says that there was a dispute about the Eleventh street property, conveyed by Weld to him, (part of block 282,) in reference to the title, which Weld was to arrange "*previous to the balance of the money being paid.*" He says, "I never paid any money; the agent attends to all these matters and pays the money." "In 1848, I left funds in the hands of my agent, Joseph F. Franklin, to purchase property for me, and I am the *bona fide* owner of the property purchased in my name in the city of St. Louis." The younger Franklin in his deposition thus fixes the amount of his alleged indebtedness to Fitch. "If the two pieces of property of which I have spoken, (being the same now in dispute,) as transferred to Fitch, were taken at $4,500, I might owe him now $2000." This would show that Fitch had advanced the sum of $6,500 in cash to the younger Franklin or to Franklin & Perry, notwithstanding it was in proof that, in 1836, Fitch failed in business and had never had any but a very limited credit afterwards. It was the opinion of witnesses, who knew him and his business relations well, that from $500 to $1200 was the extent of his credit, during the period of time covered by these transactions. It was in proof that, during this time, Fitch was living in New Orleans, engaged as a cotton broker, and lived, from day to day, upon the avails of this little business. He made no effort on the trial below to sustain, by testimony, his ability to make the advances claimed by him here, in support of his case. In refer-

ence to the $6,667 52 that Weld should have paid to the elder Franklin, in consideration of the assignment of the deed of trust, the younger Franklin says, he thinks it was paid, "*but does not personally know it.*" Whereas Weld says, he thinks he paid it to the younger Franklin, agent of his father; and the elder Franklin says, positively, it was paid in his presence to the younger Franklin. The elder Franklin says he advanced the money mentioned in the two notes to him at the time they respectively bear date, January 1st, 1846, and July 1st, 1847, and that the notes were not ante-dated. But the younger Franklin states to Williams, who drew up the deed of trust in July, 1848, that, even at that time, there were no notes in existence; that the elder Franklin had no evidence of the debt, but that he owed him the money and would give notes when he went to New York; that the younger Franklin fixed the amounts, dates, rate of interest and times of payment.

The elder Franklin undertook to speak, in his deposition, of the consideration of these two notes for $10,000 and $5,500, which he claims to have held on the younger Franklin, and which constituted the basis for the deed of trust to Williams. He says the money was advanced in cash to the younger Franklin; that he sold a farm he owned on Long Island, and out of proceeds of the sale he advanced these sums to his son, $10,000 in January, 1846, and $5,500 in July, 1847; but it is afterwards made to appear, and that by his own admission, that this farm was not sold until some time in October, 1847, nearly two years after the proceeds in part at least should have been on hand. Although a judge can take no pleasure in pursuing such an investigation as the present, yet justice requires a thorough and extended review of the testimony of this witness, in order that the merits of the case may be fully brought to light. It has been said that, in investigations of transactions charged to be fraudulent, the courts of the country should, in order to expose the real state of the matters, "probe to the quick," "cut to the bone," in order to lay bare the real situa-

tion of the case. Such a duty is painful, yet its performance becomes all important to public morals.

The elder Franklin was three days employed in giving his deposition. On the first day, the document showing the conveyance to Williams and the assignment, by himself and son, was not before him. On the next day's examination, the assignment to Weld was produced and shown to him. It will be remembered that the deed of trust was dated July 1st, 1848 ; the assignment to Weld was July 26th, 1848. The loan, I will suppose, had been made by the elder Franklin to his son, of $10,000, in cash, on 1st January, 1846, only a little over four years before the day of the taking the deposition of the witness. Another loan of $5,500 in cash, had been made to the son, July 1st, 1847, a little over three years before the taking of the same. Within a shorter period, the son has failed in business, and transferred all his property to secure his father in the payment of the loaned money, $15,500, and interest. The father has transferred that assignment and also the notes, the evidence of the loan, to Weld, and received in consideration thereof the sum of $6,672 52 in cash. The father, who never had large means, is now himself in straightened circumstances, verging towards bankruptcy, and soon after fails. The assignment to Weld, who is a son-in-law of the witness, is associated with heavy liabilities on his part, and on the part of Coffin & Weld. These are the events of which the witness is to speak, certainly not the least exciting and impressive in the life of a man, whether he be a merchant or the head of a family. With these facts in remembrance, we shall better appreciate the motives with which he makes the following statements : "My son made an assignment to me ; the amounts secured to me I don't know ; I can't say what it conveyed to me without looking at it ; I can't *tell the object for which it was made,* because it will show for itself. My son, Joseph F. Franklin, or Franklin & Perry, owed me the money in the following manner : *They owed me no cash,*

as I remember, except for commissions for doing their general business. I charged them two and a half per cent. *In all, Franklin & Perry owe me now something like* $6,000. The amount due me for my acceptances unpaid is large, but what, I don't remember ; that includes all the indebtedness of them to me. Neither Franklin, nor Franklin & Perry, had paid him any thing since July 1st, 1848, *the date of the deed of trust.* He thought the assignment was made in the city of New York. The assignment was made without his knowledge or consent ; it was handed to him about the time his son came on to New York, and is still in his possession. *Weld never has had it, as he recollects ;* thinks *Weld gave him a due bill or note or something on account of the assignment, the amount he don't know ; but Weld never paid him any money on account of transferring his interest to him.* There had been no money stirring about, *that had come into his hands.* He thought *it would be best to transfer the assignment to Weld.* After the assignment was made to him by his son, he kept it ; nothing had been done under it by him ; he never made any transfer of the property in the assignment, or any part of it, to Mr. Weld or any one else ; he did not know that he had ; he had no recollection of it ; he did whatever Franklin & Perry requested him before their failure."

Then follows the second day's examination—the assignment to Weld being before the witness, he proceeds : " My son made a deed of trust to Willis L. Williams, as trustee, about the 1st of July, 1848, to secure me in two notes drawn in my favor by him, together, $15,500. I have never seen the deed of trust, but suppose it was of real estate in St. Louis. The notes are not in my possession, and I don't know where they are. I think they were conveyed to Weld. I was indebted to Coffin & Weld, as acceptor of the draft of Franklin & Perry, to the amount of $8,000 or thereabouts, in consideration of which, I transferred the *notes to Coffin & Weld ;* they gave me a receipt *or something on paper to show their indebtedness for it.* I don't know where it is. The $15,500 was advanc-

ed to my son, in cash, and not to Franklin & Perry; neither Weld nor Coffin & Weld have paid me the $6,000, amount of the due bill or other paper given me when the assignment was made. The notes were drawn at long periods of time, as I did not *want the principal,* but only the *interest.* Joseph F. Franklin, my son, now owes me the $15,500, and nothing else. Franklin & Perry owe me the commissions."

On the third day's examination, he says: "I find the due bill for $6,667 52, given me by Weld, was paid to Joseph F. Franklin, acting as my agent. I don't know what he did with the money; *he did not give it to me.* I don't know that I saw the money, whether it was paid in gold or silver or check. Weld, Joseph and myself were together when paid. I gave the due bill back to Weld; I did not see Joseph hand back the money to Weld; I don't know any thing about the money, how it was disposed of."

Weld, in his deposition, says his debt originated in drafts drawn by Franklin & Perry to pay a balance due to Coffin & Weld, from them, for moneys overdrawn by them and misapplied. He states further, that at the time of drawing the drafts, it was distinctly understood between himself and Franklin & Perry, that the drafts were not accommodation drafts and Franklin & Perry were to take them up. While the younger Franklin, in his deposition, speaking of the same drafts, says that they were purely accommodation drafts and nothing else; that they were negotiated and the *proceeds* received by Franklin & Perry.

The foregoing is but a portion of the discrepancies, not to say contradictions that appear in the statement of the parties in relation to the leading facts of this case. No one can fail to perceive the effect which such testimony tended to produce in the mind of the court which tried the case below. Of what avail is it that a witness testifies, in so many words, that a transaction is fair and honest, if the general current of his testimony satisfies the mind that the contrary is the truth? It is true, the law, in many cases, requires us to receive the bare

Stagg *v.* Franklin & Fitch.

assertion of a witness touching what he has seen, or heard, or done; and his statement will stand good, until it is overturned by the statements of other witnesses that his representation is untrue in point of fact, or that his character for veracity is bad. But such is not the only test of the value of testimony. If it be found in direct conflict with the known laws of mind or matter, or if it run counter to all our experience of the ordinary motives of human conduct, it may have the effect to shake our confidence in the integrity of the witness; it may go further, and entirely destroy the case, which, in the opinion of those who know most about it, can only be maintained by a resort to duplicity and falsehood. The application of these remarks to the case under investigation, needs no commentary. There are other considerations which tend most strongly to sustain the finding of the court. The debt alleged to be owing to the elder Franklin from his son, was due on the 1st July, 1848, and as the elder Franklin was at that time in great need of money, to save himself from bankruptcy, the execution of notes, deferring the payment, for years, is not, under these circumstances, consistent with any other hypothesis than that the transaction was a fraud. The assignment to Weld is, if possible, still worse; the property covered by the deed of trust was worth, by the estimate of Weld himself, at least $22,000, clear of all incumbrances, and yet the elder Franklin transfers this security for $6,667 52, and loses, nay, throws away $6,000 or $7,000. No man deals in this way with any thing he really owns. It is impossible to suppose that any one who speaks and acts as the elder Franklin does, in regard to these matters, ever had any real interest in them.

There is, on the face of the record, every reason to believe that the whole of these transactions, beginning with the deed of trust to Williams and ending with the conveyances to Fitch, were mere contrivances set on foot by the younger Franklin, to screen his property from his creditors, and promoted and carried out by the willing coöperation of the elder Franklin, the father, Weld, the brother-in-law, and Fitch, the uncle; that

the younger Franklin should, at all times, have had powers of attorney to act for all the parties in all respects, in reference to the property, harmonizes well with all the other facts.

On the whole, this court is satisfied with the finding of the court below, — satisfied that the conveyance by the younger Franklin, for the use of the elder Franklin, was fraudulent, and that the assignment to Weld was fraudulent. Under this state of things, the property in his hands was held in trust for the benefit of the younger Franklin's creditors, and that trust was not divested by the purchase by Weld, under the sheriff's sale, on Lyon's execution. Had Weld, prior to his purchase at sheriff's sale under Lyon's execution, disclaimed title to the property by virtue of his fraudulent conveyance, and thus put other bidders on an equal footing with himself, his right to insist upon his purchase, under that sale, would have stood on different grounds. Weld's conduct, even after this purchase under Lyon's execution, still tended to show that he acted as trustee for the younger Franklin.

This court cannot feel the force of the argument by which it has been insisted that Weld and the elder Franklin should have been made parties to this suit. They had no interest in the cause—no decree was asked against them, and their presence was in no manner necessary to the full determination of the controversy.

The objections to the evidence offered by plaintiff are not tenable. The issue joined in the cause was simply whether the property in dispute was held by Fitch, for the use of Franklin, the younger, fraudulently against his creditors. The evidence, both documentary and oral, was admissible as tending directly to prove the plaintiff's allegations. The objection to the testimony of Williams is also without weight. Upon the whole, then, it is the opinion of this court, that the judgment of the Circuit Court must be affirmed, and, the other judges concurring, the same is affirmed.