FRANKLIN, Plaintiff in Error, v. STAGG, Defendant in Error.

1. A. having purchased certain lots in the city of St. Louis at an execution sale under judgments against B., brought suit against B. and also against C., in whom the legal title to said lots stood, asking that the title of C. might be divested and transferred to A. on the ground that the said lots had been conveyed to C. with intent to defraud the creditors of B. (of whom A. was one), and were thus fraudulently held by C. To this suit both defendants appeared, and B., in his answer, denied the fraud alleged, denied ownership in himself, and asserted full ownership in C. The court gave judgment for A., plaintiff, and by its decree vested the title to said lot in him free, and discharged of all claims in favor of either B. or C. *Held*, that this suit was a complete and final adjudication upon the title of B. to the lots in question, and that B. could not afterwards set up title thereto, either in his own behalf, or in behalf of his creditors, on the ground that A. acquired the property by making a fraudulent use of a judgment confessed by B. in his favor: the matter is *res adjudicata*.

## Error to St. Louis Land Court.

The facts are fully set forth in the opinion of the court.

*Munford*, for plaintiff in error, cited State v. Morton, 18 Mo. 53 ; Wood v. Jackson, 8 Wend. 9 ; 2 Myl. & Cr. 602 ; 3 Edw. Ch. 20 ; 8 Page, 210.

*W. L. Williams* and *Glover & Richardson*, for defendant in error.

RYLAND, Judge, delivered the opinion of the court.

In November, 1849, Henry Stagg commenced his suit in the Circuit Court of St. Louis county against Joseph Fitch and Joseph F. Franklin. The plaintiff's petition stated that in June, 1849, F. O. Day conveyed to Fitch lot 259 in Wright & Chambers' Addition to St. Louis ; that said conveyance was without any consideration moving from Fitch ; was in fact without his knowledge ; was for the benefit of Franklin, and made for the purpose of defeating the collection of judgments, which had been rendered in the courts against him, one of which was in favor of the plaintiff ; that in August, 1849, John G. Weld

conveyed to Fitch another lot of ground in the city of St. Louis, being part of lot No. 282 ; that this conveyance was also without consideration from Fitch — was intended for the use of Franklin and made to defraud his creditors ; that in November, 1848, said Franklin confessed judgment in favor of Fitch for $3014 ; that no such sum was due from him to Fitch ; that said judgment was confessed without the knowledge of Fitch and for the purpose of defrauding the creditors of Franklin ; and if at the date of said judgment any sum whatever was due to Fitch, it had been paid in full prior to the conveyance by Day to Fitch. The dates and amounts of the several judgments, recovered by Franklin's creditors against him, were fully set forth. It was then stated that executions were regularly issued on judgments against Franklin, including the plaintiff's judgment, were levied on the lots in question, and that the lots were sold by the sheriff of the county of St. Louis to the plaintiff, who received his deed therefor, on the 3d day of November, 1849 ; that the legal title still remained in Fitch ; and thereupon the plaintiff prayed that Fitch should be compelled to convey to him, or that the court would, by its decree, pass the title to these lots to the plaintiff.

The answer of Franklin was filed in December, 1849. It stated in substance that the conveyances by Day and Weld were not for his benefit ; that he had no interest whatever in the property, and fully denied the alleged intent to hinder or defraud his creditors. On the contrary, he asserted that Weld and Day were the legal and equitable owners of the property, and had, for a valuable consideration, at his instance, conveyed them to Fitch on account of a debt which he owed Fitch ; that said judgment was honestly confessed by him in favor of Fitch for a real debt; that he owed Fitch even a greater amount, and had no fraudulent motive in it ; that the judgment in favor of the plaintiff was also confessed by him, and was merely to secure the plaintiff against liabilities he was under for him (Franklin) ; and that at the time of the sheriff's sale to the plaintiff, under said judgment and others, not over five hundred

dollars were due on plaintiff's judgment. The answer then proceeded to state that long previous to the plaintiff's purchase, the lot conveyed by Weld to Fitch had been sold in good faith under judgment and execution against him to Weld, who held the sheriff's deed.

The answer of Fitch, filed in April, 1850, set up, substantially, the same defences, and concluded with a denial that plaintiff had any right in equity to coerce the payment of his judgment at the date of his purchase at the sheriff's sale.

On the issues made by these pleadings, the cause came to trial in February, 1853, and the finding was in favor of the plaintiff on all the material allegations in his petition, and therefore it was ordered, adjudged and decreed that the legal title to the said lots, pieces and parcels of land be and the same is hereby vested in the plaintiff (Henry Stagg), free and discharged of and from all claims of said defendants or either of them—Joseph F. Tranklin being one.

The defendants took the necessary steps to obtain a review of the finding, but were overruled in the Circuit Court; they afterwards appealed and removed the record into this court, where errors were assigned and the cause argued and decided at the March term, 1853, and the finding of the Circuit Court, upon the evidence adduced at the trial, sustained and the judgment appealed from affirmed in all particulars. (Case reported 18 Mo. 299.) It is in this state of things that Joseph F. Franklin, who was defendant in the suit, the nature and result of which have just been stated, commenced the present action in the Land Court of St. Louis county, in which Stagg, who was plaintiff before, is made defendant.

The plaintiff in this present suit states in his petition as follows : " Plaintiff states that on the 8th day of May, 1848, the firm of Franklin & Perry drew a draft for $2000 on J. L. Franklin, of New York ; that to negotiate said draft, plaintiff got the defendant to endorse the same as an accommodation endorser; that the same was sold to one Hayes. Plaintiff states that on the 15th day of April, 1848, the firm of Frank-

lin & Perry and the defendant made their joint promissory note for the sum of $3000 ; that said note was negotiated and the money raised on it, one half of which was taken and used by the defendant, and the other by plaintiff ; that said note had four months to run, and that the same was eventually sold to H. Crittenden. Plaintiff states that on the 6th of July, 1848, plaintiff executed three notes for $500 each, one due in four, seven and nine months, and one other on the same day for $200 ; that said notes were given to said Stagg and discharged by plaintiff, except the one for $200, which was without a good and valuable consideration, and that the consideration for the said $200 note entirely failed.

"Plaintiff states that not long after the indebtedness aforesaid was created, he became apprehensive of serious difficulties in his pecuniary affairs ; that to indemnify the defendant against any loss on account of his liabilities, at the request of defendant, he executed to him, on the 25th November, 1848, his certain promissory note for the sum of $5200 ; that the sole consideration of said note was to indemnify the defendant against the aforesaid debts ; that said note was due one day after date ; that the plaintiff, to indemnify the defendant, on the 29th November last aforesaid, confessed in the Court of Common Pleas of St. Louis county, a judgment in favor of the defendant for the sum of $5400, said sum being considered sufficient to cover all costs, damages and expenses that might accrue on said liabilities. Plaintiff states that said judgment was confessed merely to give the defendant some security against said liabilities. Plaintiff states that on the day of the date of said judgment, the defendant executed to the plaintiff an agreement herewith filed, marked exhibit A, showing the object and purposes for which said note was given, and said judgment confessed as aforesaid.

"Plaintiff states that he discharged and took up said three notes of $500 each, and that said judgment, in consideration thereof, was credited for said sum of $1500. Plaintiff states that defendant had an execution issued on said judgment, and

in February, 1850, collected on the same $600 80 in cash.
Plaintiff states that defendant took a transcript of said judg-
ment and sent the same to Iowa, and had a tract of land at-
tached as the property of the plaintiff, and sold the same, and
purchased it for a sum greatly inadequate to its real value, and
now claims to be the owner thereof ; that the said piece of land
is worth about $2000.   Plaintiff states that defendant issued an
execution on said judgment, and had the same levied on two lots
of ground in the county and city of St. Louis, state of Mis-
souri, to-wit : A lot 80 feet front on Tenth and Eleventh
streets, by 150 feet deep, a complete description of which will
appear by reference to book R, No. 4, p. 276 and following,
in the recorder's office of St. Louis county ; second, a lot con-
taining 18 feet front by 126 feet 3 inches in depth to an alley,
it being so much of block No. 282 in said city, commencing at
a point on the east line of Eleventh street, distant southwardly
25 feet from the north-east corner of said block ; thence south
with said Eleventh street 18 feet ; thence east and parallel with
St. Charles street, 126 feet 3 inches to an alley ; thence north
with said alley, 18 feet ; thence west 126 feet 3 inches to the
place of beginning.   Plaintiff states that on the 29th October,
1849, the sheriff of St. Louis county sold the said lots as the
property of the plaintiff, and that the same were purchased by
the defendant ; that he only gave for the first lot above described
the sum of $600, and for the other the sum of 344 ; that a
credit was entered on said execution for the sum of $575 ; that
the balance of said sum of $634 was applied to other execu-
tions then in the hands of the sheriff against the plaintiff ; that
said balance of $59 was all that defendant paid in cash for
said lots ; that the sheriff executed to him a deed, and that he
now holds possession of them under it ; that they are worth
about $6000.

"Plaintiff states that the sale and purchase of said lots by
the defendant as aforesaid is fraudulent and void, and if any
title passed thereby he holds the same for the benefit of the
creditors ; that said judgment was confessed to indemnify him

against. Plaintiff states that before the defendant purchased any of the property sold as aforesaid, and before he collected said sum of $602 80 on said judgment against the plaintiff, he had taken up and discharged the three notes for $500 each, and that the consideration of the $200 note had entirely failed; that on the 25th March, 1849, plaintiff executed to defendant his two promissory notes, one for $554 16 and the other for $599 16, one due in six months, and the other in twelve months ; that said notes were given in consideration of a part of Franklin & Perry's interest in the note for $3000, dated 15th April, 1848, and which had been endorsed to H. Crittenden ; that plaintiff had made an arrangement with said Crittenden to pay the balance of interest of Franklin & Perry in said note ; all of which will more fully appear by a receipt of the defendant herewith filed, marked exhibit B. Plaintiff states that before defendant had collected money on said execution and sold the property as aforesaid, he had obtained an extension of time on said note for $2000, dated 8th May, 1848, which was executed by Franklin & Perry and endorsed by defendant ; that the same was endorsed to one Hayes, of Baltimore, and that the defendant had not paid any thing on the same ; that he had an arrangement with the holder thereof by which suit was to be brought in his name ; that judgment was rendered in his favor against Perry on the same ; that if defendant ever paid any thing on said notes, it was after he had sold the property of the plaintiff and collected money on said judgment as aforesaid, and that what he has paid he has been enabled to do so by virtue of the property that he sold and the money collected on said judgment as aforesaid. Plaintiff states that after defendant got a judgment on said $2000 note against the said Perry, that in July and August, 1850, and April, 1852, defendant coerced payments of said Perry on said judgment, amounting to the sum of $2100. Plaintiff states that said sum of $2100, recovered from Perry, and the sum of $602 80 received in cash on said execution, and the real estate sold as aforesaid, worth about $8000, would make about $9702 80 that said

defendant has realized on account of his liabilities that said judgment was confessed to secure him against.

"Plaintiff states that if said defendant has ever paid any thing on account of his liabilities as the endorser of Franklin & Perry on said debts, he is not advised as to what amount he has paid or to whom it was paid. He is informed and believes that if any thing has been paid, that it was only paid as the defendant received payment from said Perry, and as he coerced payment on said judgment against plaintiff; that a large amount of said debts, for which said judgment was confessed, still remains unpaid, the holder thereof having extended the same and given indulgence thereon. Plaintiff states that, with the interest that has accrued on the judgment that he confessed in favor of the defendant, there yet remains an apparent unsatisfied balance of about $3000 on the same, for which the plaintiff is still liable to be further unjustly oppressed by the defendant.

"Now, the premises considered, the plaintiff asks that defendant may answer all the allegations of this petition to the extent of his knowledge, information or belief, and that an account be taken between plaintiff and defendant, and that said purchases, made as aforesaid, be declared to be in trust for the benefit of the creditors, whose debts said judgment was confessed to indemnify the defendant (as the security of Franklin & Perry) against, and that the defendant be made to account for all the money that he received on said execution, and for the payments made him by said Perry, and that the property be resold, and after giving the defendant a credit for all that he has actually paid in cash, on account of his liabilities as the endorser of Franklin & Perry, if he has paid any thing for them, that the money be received on said execution and the payments made him by said Perry be applied to meet said payments; and that if the same should not be sufficient, that then the proceeds of the property on a resale, or so much thereof be applied as will discharge what sums he may have actually paid as security as aforesaid, and the balance be applied to the payment of what may still be due on the debts for which the defendant was the

endorser of the plaintiff; and if there should still be a residue, that the sum be applied to the payment of a judgment in favor of Joseph Fitch against the plaintiff, for the sum of $3014, rendered in the Court of Common Pleas of St. Louis county, on the 2d day of November, 1848; that the two notes given by plaintiff to defendant, dated 23d November, 1849, amounting to $1153.38, be delivered up to this court to be cancelled; that said judgment in favor of defendant against the plaintiff, for the sum of $5400, be annulled, and that the plaintiff be discharged from any further liability on the same; and that said note for $200, dated 6th July, 1848, be delivered up to this court, to be cancelled; and that the purchase by the defendant of said lots be decreed to be void, and that the deeds therefor be delivered up to this court to be cancelled; and finally, the plaintiff asks for such other and further relief and judgment as he may be entitled to in the premises."

The defendant's answer admits many of the plaintiff's allegations as to the matters of account embraced in his petition, but denies that he held the property fraudulently as to the plaintiff's creditors, and sets up and relies upon the proceedings and judgment in the former suit in bar of the relief prayed.

On the trial in the Land Court, the foregoing facts appeared in evidence, and the finding of the court was against the plaintiff, and judgment rendered accordingly. The plaintiff now brings the case to this court by writ of error.

We are at a loss to perceive the principle on which we are called upon to reverse this judgment. In the first place, there has been a solemn and final adjudication of the very question in issue. The record of the suit wherein Stagg was plaintiff and Fitch and Franklin defendants, given in evidence by Stagg in the present suit, must be regarded as a conclusive establishment of the facts that, by a contrivance between Fitch and Franklin, the property in dispute was conveyed to Fitch in fraud of Franklin's creditors; that it was so held by Fitch, when purchased by Stagg under executions against Franklin; and that, so far as Franklin and Fitch are concerned, all right,

Franklin v. Stagg.

title and interest therein is vested in Stagg, free and clear of any claim on their part. This is the very least effect that can be assigned to the record. But it is in the face of this record that Franklin comes and prays that the property to which his title has been thus extinguished, shall be adjudged to him. This can not be imagined for a moment. But, in the second place, the plaintiff, it would seem, as if not entirely ignorant of the delicacy of his position (under all the circumstances) as plaintiff in a court of equity, bases his right to recover the property upon the ground that the facts mentioned in his petition are sufficient to constitute the defendant a trustee for his creditors. If this be so, and the right of the creditors are supposed to give a cause of action to this plaintiff, the question arises why it was not relied on in the former suit? or how it has survived the judgment rendered in that cause? It is to be observed, that when the plaintiff's creditors were seeking to subject this very property to the payment of their demands, he disclaimed all interest in the property, and came forward as a witness and testified that it belonged to Fitch. And now, after an adjudication that the conveyance to Fitch was in fraud of his creditors, one of whom has purchased the property and recovered it by an action to which the plaintiff was a party, he brings a suit, the purpose of which is to take the property away from the purchaser, and vest it in him as trustee for his creditors. When the creditors shall themselves apply to the court and make out a case for relief, it will be time enough to provide for them. And in such cases, it is the province of the court to select a person proper, in their opinion, to fill an office of trust and confidence. In the third place, if, as we have shown, the plaintiff can set up no right whatever to the lands in dispute, then there was no jurisdiction in the Land Court to authorize an examination of his account; and, of course, there can be none here. Upon the whole case, we are of opinion that the judgment should be affirmed, and the other judges concurring, it is so ordered.